## VALIDITY OF AN ELECTION TO TAKE UNDER A WILL.

Common Pleas Court of Pickaway County.

HANNAH L. WARD v. J. H. SARK AND G. W. MORRISON, EXECU-
TORS AND TRUSTEES OF THE LAST WILL AND TESTAMENT
OF JAMES WARD, DECEASED, ET AL.

Decided, January Term, 1917.

*Widow Who Elects to Take—Without Being Adequately Advised by
the Probate Judge—Not Estopped from Denying an Election—Nor
do Conduct or Declarations Bind Her—Where Not Based on Full
Knowledge as to Her Rights.*

1. A widow is not estopped from denying that she in fact elected to
take under the will of her deceased husband, or from asking that
an alleged election by her be canceled and set aside, where the
probate judge did not at the time of said election explain to her
the provisions of the will and her rights, both thereunder and by
law, in the event of her election or refusal to elect to take.

2. Nor do her declarations, conduct or actions amount to an election
to take, where it is not shown that she was acquainted with the
contents of the will, or that she knew the benefits flowing to her
under the will were less liberal than the law would give her, or
because for a time she recognized the will and accepted benefits
thereunder, where it appears that she had very little knowledge
as to the value of her husband's estate or as to the dispropor-
tionate share given her by the will.

*Bennett Westfall,* for plaintiff.
*Barton Walters,* contra.

CURTAIN, J.

Two questions are presented for determination in this case,
viz.:

1st.    Did the plaintiff, on the 19th day of November, 1912,
make an election, such as is contemplated by the statutes of
Ohio, to accept the provisions made for her by the will of her
husband, James Ward?

2d.  If not, has she by her declarations, conduct and actions, estopped herself from denying that she made such election?

The plaintiff admits that on November 19th, 1912, she appeared in the Probate Court of Pickaway County, Ohio, being the same day that the will of her husband, James Ward, was admitted to probate in said court, and signed a paper writing of which the following is a copy:

"PROBATE COURT, PICKAWAY COUNTY, OHIO.
"In the Matter of the Will of James Ward, deceased.  No. ——.
   Election of Widow.

"I, Hannah Louise Ward, widow of James Ward, late of Harrison township, Pickaway county, Ohio, deceased, having had explained to me, by the probate court of said county, the provisions of the will of said decedent, the rights under it, and by law in the event of a refusal to take under the will; hereby elect to take the provisions made for me in the last will and testament of said James Ward, deceased, in lieu of being endowed of the lands of my deceased consort, and taking the distributive share of his personal estate.

"HANNAH L. WARD,
"*Widow of James Ward, deceased.*
"Signed in open court this 19th day of November, A. D. 1912.
"A. R. VAN CLEAF,
"*Probate Judge.*"

The plaintiff's claim is, and she so testifies, that at the time she signed said paper writing that she did not know what the legal effect thereof was; that she did not know what was allowed to widows under the laws of Ohio; that she did not know the value of the several items allowed to her by the will of her husband, that she did not have any information as to the value of her husband's property; that although the will of her husband was read in her hearing before she signed said paper writing, she did not comprehend or understand the provisions made therein for her; that the probate court did not at or prior to, the time she signed said paper writing explain and inform her as to her rights under the law or under the will of her husband.

Section 10570 of the General Code of Ohio provides that:

"On the application by a widow  *  *  *    to take under the will, the court shall explain its provisions, the rights under it, and by law in the event of a refusal to take under the will."

Section 10573 of the General Code imposes the same duty upon a commissioner appointed by the court to take the election of persons unable to appear, or who are non-residents.    In such case the duty imposed is mandatory, showing a settled purpose on the part of the Legislature to safeguard the rights of that class of persons required to elect, whether to take under a will or under the law.

Did the probate court, in this case, perform the duty enjoined upon it by Section 10570? The presumption is that it did. *Bank* v. *Telegraph Co.,* 79 O. S., 100.

The paper writing signed by the plaintiff declares that it did. This paper writing, however, the plaintiff, in order to make an election, was not required by the statute to sign.    The only direction as to the manner in which an election shall be made is. contained in Section 10571, which provides that: "The election of a widow or widower to take under the will shall be entered upon the minutes of the court."    The paper writing signed by the plaintiff was an admission by her against her interests but which she has the right to explain. *Thompson's Ohio Trial Evidence,* Section 309.

Its only effect, therefore, is to reflect upon the weight that should be given to her evidence.    Giving to her evidence the weight that I believe should be given, in view of the admissions contained in said paper writing, and considering the same in connection with the evidence of David Ward, George Grooms, Mary Foust, J. H. Sark and G. W. Morrison, all of whom were present at the time the plaintiff signed said paper writing, I think that it is clear that the probate judge did not advise and instruct the plaintiff as he was required to do by the terms of said Section 10570.    This leads to the inquiry as to the effect of the failure of the probate court to instruct the plaintiff, as required by Section 10570.

That it was the intention of the Legislature that a widow, or widower, required to elect should have ample opportunity to

become advised, before making the election, is apparent from the provisions of Section 10567, which gives the right to file a petition in the common pleas court asking a construction of the provisions of the will "in her or his favor and for the advice of the court, or the proper appellate court on appeal therefrom"; and that the advice given should be with knowledge of the value of the provisions made by the will, and the value of their rights under the law, is recognized by Section 10574 of the General Code, relating to an election by persons *non compos mentis,* where it is provided that the court "shall appoint some suitable person to ascertain the value of the provisions made for such widow or widower in lieu of the provisions made by law in the estate of the deceased consort." The next section, 10575, only authorizes the election to take under the will, in such a case to be made "after the court is satisfied that the provision made by the testator for the widow or widower, in the will, is more valuable and better than the provisions by law."

In the case now under consideration the widow was present in the probate court, and the probate judge, in person, assumed to enter an election for her to take under the will of her deceased husband, without having explained to her the provisions of said will, her "rights under it, and by law in the event of a refusal to take under the will." Does this constitute a binding statutory election on the part of the widow? This precise question does not appear to have been directly decided in this state. In the case of *Mellinger* v. *Mellinger,* 73 O. S., 221, it was decided that:

"1.   The duties enjoined upon the probate court by Section 5964, Revised Statutes, are judicial duties and can not be performed by a deputy clerk of said court.

"2.   A deputy clerk of the probate court is without right or authority to receive the election of a widow or widower to take under the will of a deceased consort; and an election made before such deputy clerk, and entered of record, may, on application of the party making it to a court of equity, be vacated and set aside."

The election entered in that case was, with the exception of the names of the parties, in almost the identical language of the

election entered in this case. In that case it will be observed that the election was held to be void because it was taken by a person who did not have the statutory authority to receive it. In this case the election was taken by an officer authorized to receive it, only after the performance by him of the duties enjoined upon him by Section 10570 of the General Code. Those duties he did not perform, and he had no authority to receive the election until they were performed. In the case of *Millikan* v. *Welliver*, 37 O. S., 461, the second paragraph of the syllabus is as follows:

"2. In order to bar a widow of her right to dower and to such share of the personal estate of her husband as if he had died intestate leaving children, her election must be made either by matter of record in the proper court as required by statute, or actually and in fact under such circumstances as would create against her an estoppel of her right to claim under the law."

In the case of *Mellinger* v. *Mellinger, supra,* Judge Crew, in delivering the opinion of the court on page 228, used the following language:

"While there is no allegation in the amended petition of Anna Laura Mellinger in this case that she was intentionally deceived or misled, or that information as to her rights was purposely concealed or withheld from her, yet the fact remains, and is within the finding of the circuit court, that whatever election was made by said Anna Laura Mellinger in the Probate Court of Columbiana County, was made by her in ignorance of her rights in the estate of her deceased husband under the law, in the event she refused to take under the will. Before making her election she was entitled to the fullest information as to the provisions of said will, her rights under it, and under the law, in the event of her refusal to take under the will; and it was the imperative duty of the probate court to advise and inform her touching these matters. Election necessarily involves choice, and intelligent choice involves a knowledge both of the facts and the law applicable to the subject-matter, with reference to which a choice is to be made. And where, as in the present case, an election is made by the widow, without full knowledge of the condition of the estate, and of her rights, but in ignorance of both, it can not, as a matter of fact, be asserted that she has made any choice or election."

It is said that the foregoing language was not necessary to the determination of that case. Be that as it may, the language is applicable to the facts of the case at bar, and it states clearly and concisely what I believe to be the law as stated by the text-writers and in the adjudicated cases where the facts are similar to the case above.

In the case at bar the evidence shows that the paper writing, a copy of which is set forth in plaintiff's petition, was signed by the plaintiff without full knowledge of the condition of her husband's estate; and of her rights, under his will and under the law, it can not, as a matter of fact, be asserted that she has made any choice or election.

It therefore remains to determine whether or not the plaintiff has made an election, "actually and in fact under such circumstances as would create against her an estoppel of her right to claim under the law."

The facts upon which defendants base their claim of estoppel by an election in fact on the part of the plaintiff are alleged in the second defense of their answer. It is therein alleged, in substance, among other things, that at the time the plaintiff signed the paper writing, a copy of which is set forth in her petition, that the probate court explained to and advised her of her rights both under the will and under the law, and that she then signed said paper writing and thereby accepted the provisions made for her by the will. I have heretofore, in this opinion, found that these averments are not supported by the evidence. Therefore they can not be considered in support of the other allegations contained in the second defense of the answer.

It is further averred in said second defense that:

"Plaintiff was acquainted with the contents of said will long prior to the death of said James Ward, her husband, and all the while knew the provisions made therein for herself, and after the death of her husband, and prior to the probate of said will, declared her satisfaction with said will and the provision therein made for her, and declared her intention to accept the same and to elect to take under the said will, although she then knew that the law made a more favorable provision for her."

The averments in the above quoted paragraph of the answer that the plaintiff was acquainted with the contents of the will in question and the provision made therein for her, prior to the death of her husband, and that after his death and before the probate of the will, ''she then knew that the law made a more favorable provision for her,'' I find are not supported by the evidence.

It is further alleged, in substance, in said answer, that the defendant on the 29th day of May, 1913, leased to one George Conrad 157 acres of the land devised by said testator for the term of one year, beginning March 1st, 1914, and that said Conrad has taken possession thereunder. No act is charged against the plaintiff in this connection. The only claim made in reference to this is that the defendants would not have made this lease had the plaintiff not in fact elected to take under the will. This allegation is not, therefore, an allegation of an estoppel fact against the plaintiff.

The balance of the allegations contained in the answer consists, viz., of the recitals, of payments of money made by defendants to plaintiff, under the provisions of said will, at different times, between the date of the probate of the will and the commencement of this action and of claims of ownership made by her to certain properties under the will, and of certain benefits received by her under the will. The total amount, approximately, alleged to have been received by the plaintiff was $1,081.66. Do these facts, if admitted to be true, estop the plaintiff from claiming that she did not in fact elect to take under the will of her husband? The third paragraph of the syllabus of the case of *Millikan* v. *Welliver* is as follows:

''3. Where it does not appear that a widow has acted with a full knowledge of the condition of her husband's estate and of her rights under the will and under the law, her acts in paying the debts of the husband out of his money, receiving and holding the balance, and having possession and control of the real and personal estate for five months after her husband's death, do not constitute such election, in fact, to take under the will, as estops her from claiming, under the law within the time allowed.''

In that case the widow died without having made an election under the statute and before her time therefore had expired, and it was claimed that by reason of certain acts and conduct on her part that she had in fact made an election and that she was estopped from denying the same. In this case the widow, within the time allowed her by law, assumed to make an election under the statute, which I have held was not a legal statutory election. It is now claimed that although it be true that she did not make a legal statutory election, that by reason of her having recognized the will of her husband for the length of time shown by the evidence, and having received the benefits thereunder, already referred to, that she did in fact elect to take under said will, and that she is now estopped from claiming otherwise.

In *Pomeroy's Equity Jurisprudence* (3d Ed.), Volume 1, Section 512, the author says:

"Subject to the limitation as to time (enacted by the statutes of various states), it is a well settled rule of equity that a person bound to elect has a right to become fully informed of and to know all the facts affecting his choice, and upon which a fair and proper exercise of the power of election can depend. To this end he has a right to inquire into and ascertain all the circumstances connected with the two properties, that is, his own and the one conferred upon him, and especially their relative condition and value; and he will not be compelled to elect until he has made, or at least has had an opportunity to make, such an examination as enables him to learn the truth. It follows that where an election has been made in ignorance or under a mistake as to the real condition and value of the properties, or under a mistake as to the real nature and extent of the parties own rights, such a mistake is regarded as one of fact, rather than of law; the election itself is not binding and a court of equitable powers will permit it to be revoked unless the rights of third persons have intervened which would be interfered with by the revocation."

The decisions in the case of *Millikan* v. *Welliver* and *Mellinger* v. *Mellinger,* heretofore referred to, recognize the rule above stated in Pomeroy's Equity Jurisprudence. In *Millikan* v. *Welliver,* 37 O. S., the court in its opinion on page 466 said:

"In order that acts of a widow shall be regarded as equivalent to an election to waive dower, it is essential that she act with a full knowledge of all the circumstances and of her rights, and it must appear that she intended by her acts, to elect to take the provision which the will gave her. These acts must be plain and unequivocal, and be done with a full knowledge of her rights and the condition of the estate. A mere acquiescence without a deliberate and intelligent choice, will not be an election."

In *Mellinger* v. *Mellinger,* 73 O. S., *supra,* the court in its opinion quotes with approval the foregoing paragraph from *Millikan* v. *Welliver.*

In the case of *Sill* v. *Sill,* 1st Pac., 556, the Supreme Court of Kansas adopted the foregoing paragraph from *Millikan* v. *Welliver* as the fifth paragraph of its syllabus in that case.

In *Anderson's Appeal,* 36 Pa. St. Rep., 476, it is held that:

"An election by matter *in pais* can only. be determined by plain and unequivocal acts, under a full knowledge of all the circumstances and of the parties rights; one is not bound to elect until he is fully informed of the relative value of the things he is to choose between; and if he makes an election before the circumstances necessary to a judicious and discriminating choice are ascertained he will not be bound."

In *Re Woodburn's Estate,* 21st Atl. Rep., 16, the Supreme Court of Pennsylvania, January 5, 1891, held that:

"A widow is not bound by her election to take the provision made for her by her husband's will where she was ignorant of her rights under the intestate laws when she executed an instrument of acceptance of such provision, and no explanation was made her of her rights in either case, though she was not in any wise deceived or misled."

Paxson, C. J., in delivering the opinion of the court in that case on page 17 said:

"The authorities are clear that nothing less than unequivocal acts will prove an election, and they must be done with a knowledge of the party's rights, as well as of the circumstances of the

case. Nothing less than an act intelligently done will be sufficient; she should know, and, if she does not, she should be informed, of the relative values of the properties between which she was empowered to choose. In other words, her election must be made with a full knowledge of the facts. The rule applies with a special force where the widow is called upon, as in this case, to make her election shortly after her husband's death.''

A further citation of authorities is not necessary. Neither is it necessary to further examine and comment upon the authorities cited by counsel in this case. It is only necessary to say that I consider that the rule stated in the case of *Millikan* v. *Welliver,* 37 O. S., 466, heretofore quoted, is the law which should govern in a case of this character.

Applying this rule to the allegations contained in the second defense of defendant's answer, and the facts proven thereunder, heretofore referred to, the question presented is, did Mrs. Ward in making the declarations, doing the acts, and receiving the benefits and payments which she did, as shown by the evidence, act with full knowledge of all the circumstances, and of her rights under the will of her husband and under the law and the condition of her husband's estate?

The inventory of the testator's estate shows that it was of the value of $99,609, $33,434 thereof being personalty and $66,-175 being realty. This inventory was not made at the time the plaintiff is alleged to have elected to take the provisions made for her in her husband's will. She testified that she did not know that she ever saw it, or an abstract of it, but she admits that Mr. Sark did tell her about some of the things that were in it. She testifies that she did not obtain any information in regard to it as filed in the probate court until in August, 1913. This evidence is not contradicted. From the cross-examination of the plaintiff it is apparent that she did not, at the time she testified, have any intelligent idea of the value of her husband's estate, either real or personal. She knew that he was the owner of certain real estate, but she did not seem to have any real knowledge of its value and she did not appear to have any intelligent conception of the amount or value of his personal estate. She

testified that she had no knowledge of the value of the provisions made for her by her husband's will, or of what would have been the value of her rights in her husband's estate under the law. Mr. Sark testified that before the will was probated and before said inventory was made that he explained to plaintiff what the estate consisted of, what she would get under the will and as near as he could at that time what she would get under the law. This conversation is denied by plaintiff. Assuming, however, that Mr. Sark did have the conversation with Mrs. Ward that he testified to, was he then able to and did he give her the information and advice that the law contemplates that she was entitled to before making an election? In substance, Mr. Sark says: "I told her that under the law she would get of the personalty six or seven thousand dollars; that the appraisers would set her off a year's allowance, but that they did not know what it would be; that she would be entitled to one-third of the real estate." On cross-examination he says that he did not suggest to her what would be a fair year's allowance in an estate of about one hundred thousand dollars; that he did not tell her what was the fair rental value of the farm which he, Sark, was to get; that he did not say anything about the rental value of the home place in Ashville; that he did not tell her what would be the value of her annuity under the will; that he did not inform her as to the value of her estate, under the will, in the Ashville property.

I have no doubt but what Mr. Sark did undertake to fairly advise Mrs. Ward as to her rights, but I am of the opinion that at the time he did so that he was not possessed of the proper information to do so and that at that time he did not realize or know what information she was entitled to. Assuming, therefore, that Mr. Sark gave to the plaintiff all of the information which the record shows that he says he did, I am of the opinion that, under the rules of law I have stated, it falls short of what the plaintiff was entitled to receive before being bound by an election. As I have already found, the probate court did not give her the information to which she was entitled, and the evidence fails to show that she received such information from any other source.

While it is not pleaded, it is asserted in argument that J. H. Sark, one of the beneficiaries under the will of James Ward, made certain valuable improvements upon the land mentioned in Items 5 and 6 of said will which he would not have made had the plaintiff declined to elect to take under said will, and that for that reason she should be held to be estopped from denying that she in fact did elect to take under said will. I will not consider the question of the failure to plead these facts as an estoppel; for if I found the facts proven sufficient to create an estoppel, I would permit Mr. Sark to be made a party, in his individual capacity, and would give him leave to file an answer setting forth such facts.

Item 5 of the will provides that:

"In renting the real estate now occupied by J. H. Sark in Walnut township, Pickaway county, Ohio, consisting of 300 acres, more or less, I direct that he be permitted to continue to rent and occupy the same at an annual rental of twelve hundred dollars, and the further consideration that he make all improvements and repairs at his own expense."

By looking at Item 6 of the will we find that the testator did not intend that Mr. Sark should have any other interest in said lands than that of tenant until after the death of the plaintiff, or after five years from the death of the testator. Neither of these events had happened at the time Mr. Sark made the improvements referred to, and they have not yet happened. He, as tenant, held possession of said premises, under the will, at the time he made said improvements, and it was his duty under the terms of the will to "make all improvements and repairs at his own expense."

By Item 6 of his will the testator directs his executors, after the death of his wife, or five years after his death, to sell said farm to Mr. Sark for a certain sum and on certain conditions. He does not devise it to him. He simply gives Mr. Sark the option of purchasing it. That he may decline to do, or be incapacitated from doing. In any event at the time he claims to have made said improvements, he had no vested interest in

said lands other than that as tenant, and he must be presumed to have made the improvements that he did make under the obligations imposed upon him by the will.

As already indicated it is charged that the plaintiff has received certain benefits and sums of money under the will. Under the law, as widow, she was entitled to the use of the mansion house for a year. Under the will it was the duty of the defendants to keep said premises in repair, irrespective of the election of plaintiff to take under the will. Therefore, the items for wiring the house and placing electric fixtures therein and fencing said premises should not be charged against the plaintiff. There is an item for linoleum, about which there is a dispute, but I am of the opinion that the evidence fails to show that the purchase of this article was completed during the lifetime of James Ward. Without enumerating the several items, it is sufficient to say that all except the two mentioned should be charged to the plaintiff. It is apparent that the plaintiff, if said election is canceled and set aside, and she is permitted to take under the law, will have in the hands of the defendants an amount far in excess of the amounts which I have found that she should be charged and that it will not be necessary for her to return any of the amounts received by her.

Counsel for the executors and trustees in the brief say:

"The court will not be unmindful of the fact that Mary Foust is given a legacy of $5,000 under the will of decedent conditioned upon the plaintiff electing to accept the provisions made for her in said will; and since the widow did elect to accept said provisions and thereby vested said bequest of $5,000 in the said Mary Foust, who is an unprotected and inexperienced girl, having no home except with plaintiff, she should not be deprived of said bequest of $5,000."

This matter is not pleaded by the executors and trustees in their pleadings and no pleading has been filed in this action by Mary Foust although she is a party thereto.

If the facts referred to by counsel in their brief create an estoppel in favor of any one it is Mary Foust or some person

claiming under or through her, and to be available as a defense to this action would have to be pleaded by her or some person claiming under or through her.  The executors, so far as the record shows, are in law, mere strangers to the question raised by them in their brief.

In *1 Herman on Estoppel,* p. 14, Section 20, it is said:

"There is one general universal rule, applicable alike to estoppel by record, by deed, and to equitable estoppel or estoppel *in pais,* that estoppels must be mutual.  Strangers can neither take advantage of nor be bound by an estoppel.  Its binding effect is between the immediate parties, their privies in blood, in law, and by estate."

I, therefore, find that the plaintiff is not estopped from denying that she in fact elected to take under the will of her husband, James Ward, and that said alleged election by her should be canceled and set aside, and that the plaintiff upon settlement with the defendants be charged with the amounts above indicated, and that the defendants pay the costs of this proceeding.